UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| PHARMACY CORPORATION OF | ) | |
| AMERICA, d/b/a PHARMERICA | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| QUABBIN VALLEY CONVALESCENT | ) | |
| CENTER, INC. d/b/a QUABBIN VALLEY | ) | |
| HEALTHCARE; and BLUPOINT | ) | |
| HEALTHCARE, LLC d/b/a QUABBIN | ) | |
| VALLEY HEALTHCARE | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, PharMerica Corporation of America d/b/a PharMerica ("PharMerica"), by

counsel, states as follows for its Complaint against Defendants, Quabbin Valley Convalescent

Center, Inc. d/b/a Quabbin Valley Healthcare ("Quabbin") and Blupoint Healthcare, LLC d/b/a

Quabbin Valley Healthcare ("Blupoint") (collectively, the "Defendants"):

## NATURE OF THE ACTION

1.     This action arises out of Defendants' failure to pay for pharmacy goods and

services provided by PharMerica to the residents of a skilled nursing facility located and 821

Daniel Shays Highway, Athol, Massachusetts 01331 (the "Facility") respectively owned,

operated, or otherwise controlled by the Defendants.

## THE PARTIES

2.     PharMerica is a California corporation with its principal place of business in

Louisville, Kentucky. Thus, for federal diversity jurisdiction, PharMerica is a citizen of

California and Kentucky.  PharMerica provides pharmacy goods and services to residents of skilled nursing facilities "under arrangements," as defined by federal law.

3.      Quabbin is a Massachusetts corporation with a principal office in Athol, Massachusetts.  It is a citizen of Massachusetts for diversity purposes.  At all times relevant, Quabbin operated a skilled nursing facility in Athol, Massachusetts.  Service may be made upon Quabbin via its registered agent as listed in the caption.

4.      Blupoint is a Massachusetts limited liability company whose members are citizens of Massachusetts.  Therefore, Blupoint is a citizen of Massachusetts for diversity purposes.  At all times relevant, Blupoint operated a skilled nursing facility in Athol, Massachusetts.  Service may be made upon Blupoint via its registered agent as listed in the caption.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over the Defendants because Defendants transact business in this Commonwealth.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), as Defendants reside in the Commonwealth in which this district is located, and Defendants reside in this judicial district.  Moreover, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims in this action occurred in this judicial district.

## STATEMENT OF FACTS

8.      PharMerica provides pharmacy goods and services to residents of skilled nursing facilities and long-term care facilities as an "under arrangements provider" as that term is defined by federal law.

2

9.      On or around October 15, 2012, PharMerica entered into an agreement with Quabbin (the "Pharmacy Services Agreement") wherein PharMerica agreed to provide pharmacy goods and services to the residents of the Facility, and Quabbin agreed to pay for said services. [1]

10.     Under Section 2 the Pharmacy Services Agreement, it commenced on October 15, 2012, and continued through October 14, 2013. After the initial term, the Pharmacy Services Agreement automatically renewed for successive one-year terms, unless otherwise terminated in accordance with the Pharmacy Services Agreement.

11.     Under Section 7(A) of the Pharmacy Services Agreement, termination could only be effectuated if proper notice was provided ninety (90) days before the end of the then current term and termination was the last day of the initial or successive terms.

12.     Notwithstanding anything contained in Section 7, Section 7(D) stated that any termination was void if outstanding amounts were owed under the Pharmacy Service Agreement at the time of notice or the effective date of such termination.

13.     On or around January 1, 2020, the Facility changed ownership from Quabbin to Blupoint.  On or around that time, Quabbin assigned the Pharmacy Services Agreement to Blupoint, and Blupoint assumed all obligations thereunder. Therefore, the Defendants are jointly and severally liable for all amounts collectively owed under the Pharmacy Services Agreement as well as all other obligations thereunder.

14.     Section 14 of the Pharmacy Services Agreement provided that, prior to any change in ownership, *i.e.*, all amounts owed for services provided before January 1, 2020, Quabbin "must pay all amounts outstanding this [Pharmacy Services] Agreement."

---

[1] The Pharmacy Services Agreement contains confidential information, including pricing information, and has not been attached.  Copies can be provided to the Court under seal and the Defendants upon request and entry of a protective order.

15.     Quabbin failed to pay all amounts outstanding under the Pharmacy Services Agreement prior to the Facility's change of ownership as required thereunder.

16.     Following the Facility's change of ownership, Blupoint indicated to PharMerica that it had assumed the Pharmacy Services Agreement from Quabbin effective January 1, 2020.

17.     At the request of Blupoint, PharMerica continued to provide pharmacy goods and services to Blupoint and the residents of the Facility pursuant to the terms of the Pharmacy Services Agreement, and Blupoint agreed to pay PharMerica pursuant to the terms of the Pharmacy Services Agreement.

18.     Blupoint failed to pay all amounts outstanding under the Pharmacy Services Agreement after the Facility's change of ownership as required thereunder.

19.     Despite the assignment and assumption of the Pharmacy Services Agreement, Blupoint notified PharMerica that it would be terminating the Pharmacy Services Agreement effective February 29, 2020.

20.     However, pursuant to Section 2 and 7, the Pharmacy Services Agreement could not be terminated in the middle of a successive term, which was through October 14, 2020.

21.     In addition, and pursuant to Section 7(D), the Pharmacy Services Agreement could not be terminated because outstanding invoice amounts were owed and past due on the alleged effective date of termination, February 29, 2020.

22.     Defendants improperly terminated the Pharmacy Services Agreement when they stopped ordering pharmacy goods and services from PharMerica on or about February 29, 2020.

23.     PharMerica performed all obligations required of it under the Pharmacy Services Agreement, submitted monthly invoices, and otherwise satisfied all conditions precedent to payment by Quabbin and Blupoint.

24.     Pursuant to the Pharmacy Services Agreement and PharMerica's performance thereunder, the Defendants are obligated to pay for the services provided by PharMerica.

25.     Pursuant to Section 6(D)(1) of the Pharmacy Services Agreement, and invoices submitted to Defendants, Defendants were to remit payment to PharMerica within ninety (90) days.

26.     The Pharmacy Services Agreement further provides that any invoiced amounts not paid within ninety (90) days shall accrue interest at the rate of 18% per annum.

27.     Pursuant to Section 6(D)(2), the Pharmacy Services Agreement, PharMerica is entitled to recover its reasonable attorneys' fees, costs, and expenses of collection.

28.     Despite repeated demands for the sums due and owing under the Pharmacy Services Agreement, Defendants have failed and refused to pay PharMerica.

29.     Without legal justification or excuse, Defendants continue to withhold payments from PharMerica for the goods and services provided by PharMerica to Defendants and residents of their respective facilities.

30.     As a direct and proximate result of Defendants' failure to pay, PharMerica has suffered damages, including but not limited to amounts due and owing, as set forth in the invoices, and interest, in excess of $75,000.

31.     As a result of the Defendants' failure to pay, PharMerica has incurred attorneys' fees and other costs in preparing and filing this action, all of which are the responsibility of the Defendants.

32.     PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of the Defendants.

33.     Upon information and belief, the Defendants have been reimbursed by Medicare for all or a significant portion of the services provided by PharMerica and have directly or indirectly benefitted from such reimbursements.

34.     Upon information and belief, Defendants have reported PharMerica's invoice charges as valid expenses to the Internal Revenue Service for the purpose of reducing the amount of adjusted gross income on which Defendants and/or their members must pay taxes.  As a result, Defendants and/or their members have paid lower taxes than they otherwise would have.

<u>COUNT I – BREACH OF CONTRACT - FAILURE TO PAY</u>

35.     Except to the extent inconsistent with the relief requested in this Count, PharMerica incorporates by reference all allegations set forth above.

36.     A valid and enforceable agreement exists between PharMerica and Defendants under which PharMerica agreed to provide pharmacy goods and services to the Facility and its residents and Defendants agreed to pay PharMerica for those services.

37.     PharMerica performed all of its obligations under the Pharmacy Services Agreement, including providing Defendants with pharmacy goods and services and submitting monthly invoices.

38.     Pursuant to the Pharmacy Services Agreement, and PharMerica's performance thereunder, Defendants are obligated to pay for the pharmacy goods and services provided by PharMerica.

39.     Without legal justification or excuse, Defendants materially breached the Pharmacy Services Agreement with PharMerica by failing to perform their obligations thereunder.

40.     As a direct and proximate result of Defendants' breach of the Pharmacy Services Agreement, PharMerica has suffered damages in excess of $75,000.

41.     Pursuant to Section 6(D)(2) of the Pharmacy Services Agreement, interest accrues on the unpaid invoices at 18% per annum.

42.     Further, pursuant to Section 6(D)(2) of the Pharmacy Services Agreement, PharMerica is entitled to recover its attorneys' fees and cost incurred in bring this action.

### COUNT II– BREACH OF CONTRACT – IMPROPER TERMINATION

43.     Except to the extent inconsistent with the relief request in this Count, PharMerica incorporates by reference the allegations set forth above.

44.     The Pharmacy Services Agreement provides that any termination notice issued by Defendants that attempts to untimely termination before the last day of the applicable term is untimely, improper, and void.

45.     The Pharmacy Services Agreement also provides that when there are payment amounts past due to PharMerica at the time of notice or effective termination date, the termination shall be void and that Defendants may not terminate the Pharmacy Services Agreement.

46.     Before the end of the then current term date of October 14, 2020, and while amounts were due and owing, Defendants ceased ordering pharmacy-related goods and services from PharMerica and began ordering medications from another pharmacy provider in violation of the terms of the Pharmacy Services Agreement, despite notice that their actions violated the terms of the Pharmacy Services Agreement.

47.     As a result of Defendants' breaches, PharMerica has suffered damages, including, but not limited to lost profits.

48.     PharMerica is entitled to recover damages from Defendants in an amount to be proven at trial, including lost profits, interest and attorneys' fees.

7

## COUNT III– PROMISSORY ESTOPPEL

49.     Except to the extent inconsistent with the relief requested in this Count, PharMerica incorporates by reference the allegations set forth above.

50.     The Defendants made promises to PharMerica to induce it to continue providing services to the Defendants.

51.     PharMerica reasonably relied upon such promises made by the Defendants and continued to provide services.

52.     The Defendants' promises and PharMerica's reliance thereon resulted in detriment and damages to PharMerica, and PharMerica is entitled to recover damages in an amount to be proven at trial.

## COUNT IV – UNJUST ENRICHMENT

53.     Except to the extent inconsistent with the relief requested in this Count, PharMerica incorporates by reference the allegations set forth above.

54.     PharMerica has conferred a benefit of valuable services to the Defendants for which they have not been paid.

55.     PharMerica's services, which Defendants accepted, were rendered under circumstances pursuant to which the Defendants reasonably should have expected PharMerica would expect to be compensated.

56.     The Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for services provided by PharMerica, and have wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

57.     Consequently, the Defendants have been unjustly enriched through the receipt of such services and at the expense of PharMerica.

58.     Furthermore, the Defendants have a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to PharMerica if they have not timely paid invoices as required by the Pharmacy Services Agreement.  See 42 U.S.C. §1395x(w)(1); Medicare Manual, Pub 100-4, Chapter 6, Section 10.4.1; see also 42 U.S.C. §§ 1395y(a)(18), 1395cc(a)(1)(H)(ii) and (g).

59.     For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by the Defendants as reimbursement by Medicare for pharmacy goods and services provided by PharMerica, plus interest, costs, and attorneys' fees.

### COUNT IV – ACCOUNT STATED

60.     In the alternative to Counts I-IV, PharMerica asserts this claim for account stated.

61.     Except to the extent inconsistent with the relief requested in this Count, PharMerica incorporates by reference the allegations set forth above.

62.     Pursuant to the Pharmacy Services Agreement with PharMerica, the Defendants agreed to pay PharMerica for the services it supplied to the Defendants.

63.     PharMerica delivered invoices for goods and services rendered by PharMerica to the Defendants.[2]

64.     The Defendants, without valid justification, excuse, or dispute of such invoices, have not paid PharMerica on the majority of the amount invoiced and have acquiesced to the accuracy of the account by failing to timely object.

65.     The Defendants are justly indebted to PharMerica, as of the date of filing of this Complaint, in the amount of $208,479.71, plus interest and attorney fees.

---

[2] The invoices contain Protected Health Information as that term is defined under HIPAA, and as such the invoices are not attached to this Complaint.  Upon entry of a protective order, PharMerica will make the invoices available to the Defendants (who have been provided with copies in the ordinary course of business) and the Court.

**PRAYER FOR RELIEF**

WHEREFORE, PharMerica requests judgment against the Defendants, jointly and severally, as follows:

A.  An award of damages, jointly and severally, in an amount to be proven at trial, but no less than $208,479.71.

B.  PharMerica's costs, expenses, and reasonable attorneys' fees associated with the prosecution of this action;

C.  The imposition of a constructive trust on sums received by the Defendants as Medicare reimbursement for services provided by PharMerica and not paid for by Defendants;

D.  Pre-judgment and post-judgment interest; and

E.  All other relief to which PharMerica may be entitled.

Dated: July 9, 2020

The Plaintiff,
PHARMACY CORPORATION OF
AMERICA, d/b/a PHARMERICA
By Their Attorney

/s/ Jeffrey E. Poindexter
Jeffrey E. Poindexter, BBO 631922
BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street – Suite 2700
P.O. Box 15507
Springfield, Massachusetts 01115
Telephone: (413) 781-2820
Facsimile: (857) 800-8249
jpoindexter@bulkley.com

– and –

Benjamin C. Fultz (*to seek admission pro hac vice*)
Jennifer Metzger Stinnett (*to seek admission pro hac vice*)
FULTZ MADDOX DICKENS PLC
101 S. Fifth St., Suite 2700
Louisville, Kentucky 40202
(502) 588-2000
(502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

3322833